**No. 25-1141**
**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE EIGHTH CIRCUIT**

---

STATE OF MISSOURI,
*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY et al.
*Respondents*.

---

THE STATE OF MISSOURI'S MOTION TO STAY THE FINAL RULE OF THE U.S. ENVIRONMENTAL PROTECTION AGENCY

---


**ANDREW T. BAILEY**
ATTORNEY GENERAL
Joshua M. Divine, #69875
*Solicitor General*
Samuel C. Freedlund, #73707
*Deputy Solicitor General*
*Attorneys for Petitioners*

Office of the Attorney General
815 Olive St.
Suite 200
St. Louis, Missouri 63101
Phone: (314) 340-4869
Fax (573) 751-1774
Samuel.Freedlund@ago.mo.gov

**TABLE OF CONTENTS**

TABLE OF CONTENTS .......... i

TABLE OF AUTHORITIES .......... iii

INTRODUCTION .......... 1

STATEMENT OF THE CASE .......... 4

I. Background on the 2015 ozone NAAQS and previous NAAQS designations for the St. Louis area .......... 4

II. EPA publishes the Final Rule reclassifying the St. Louis as "serious" nonattainment without providing Missouri notice or opportunity for comment. .......... 5

III. EPA grants Missouri's petition to reconsider its determination that the area failed to attain by the attainment date, but asserts it does not have authority to stay the existing Final Rule .......... 7

ARGUMENT .......... 8

I. Missouri is Likely to Prevail on the Merits. .......... 9

A. Missouri is likely to prevail on the merits because EPA has represented that it will reconsider the Final Rule. .......... 9

B. Missouri is likely to prevail on the merits because EPA's determination that there is good cause for enacting the Final Rule without prior notice or an opportunity for comment was arbitrary and capricious. .......... 12

i. The Final Rule wholly fails to demonstrate the rule was either "insignificant in nature and impact" or "inconsequential to the industry and to the public." .......... 15

ii. Even if EPA had not waived the argument, the agency's decision to forego normal notice and comment procedures was arbitrary and capricious. .......... 16

II. Missouri will suffer irreparable injury absent a stay. .................. 21

A. EPA's Final Rule impermissibly harms Missouri's sovereign interests in maintaining its own laws and regulating emissions within its own borders. .......................... 21

B. EPA's Final Rule causes immediate, irreparable monetary harm to Missouri and its citizens. .......................................... 24

III. The Balance of Equities and Public Interest Favor a Stay........... 25

CONCLUSION ........................................................................... 26

CERTIFICATE OF SERVICE............................................................... 28

CERTIFICATE OF COMPLIANCE....................................................... 28



Appellate Case: 25-1141 Page: 3 Date Filed: 05/20/2025 Entry ID: 5518264

## TABLE OF AUTHORITIES


**Cases** Page(s)

*Abbott v. Perez*,
585 U.S. 579 (2008)....................23

*Citizens Telecommunications Co. of Minn. v. FCC*,
901 F.3d 991 (8th Cir. 2018)....................13

*Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*,
591 U.S. 1 (2020) ....................15

*Ethyl Corp. v. Browner*,
989 F.2d 522 (D.C. Cir. 1993)....................10

*Federal Communications Commission v. Prometheus Radio Project*,
592 U.S. 414 (2021)....................16

*Hill v. Xyquad, Inc.*,
939 F.2d 627 (8th Cir. 1991)....................25

*Iowa League of Cities v. EPA*,
711 F.3d 844 (8th Cir. 2013)....................12

*Iowa Utls. Bd. v. FCC*,
109 F.3d 418 (8th Cir. 1996)....................24, 26

*Kansas v. United States*,
249 F.3d 1213 (10th Cir. 2001)....................23

*Kiowa India Tribe of Oklahoma v. Hoover*,
150 F.3d 1163 (10th Cir. 1998)....................23

*Mack Trucks, Inc. v. EPA*,
682 F.3d 87 (D.C. Cir. 2012).................... 13, 14, 15, 17

*Michigan v. EPA*,
576 U.S. 743 (2015)....................15




Appellate Case: 25-1141 Page: 4 Date Filed: 05/20/2025 Entry ID: 5518264

*Missouri Limestone Producers Ass'n, Inc. v. Browner*, 165 F.3d 619 (8th Cir. 1999) ... 13

*N.J. Dep't of Envt'l Protection v. EPA*, 626 F.2d 1038 (D.C. Cir. 1980) ... 15

*North Dakota v. EPA*, 730 F.3d 750 (8th Cir. 2013) ... 9, 21

*Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724 (8th Cir. 2008) ... 9

*Sorenson Comm'n, Inc. v. FCC*, 755 F.3d 702 (D.C. Cir. 2014) ... 14

*U.S. v. Brewer*, 766 F.3d 884 (8th Cir. 2014) ... 13, 18

*Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749 (D.C. Cir. 2001) ... 14, 15

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ... 8

**Statutes**

5 U.S.C. § 553(b) ... 12

5 U.S.C. § 553(b)(B) ... 6, 14

5 U.S.C. § 553(b)–(c) ... 13, 14

5 U.S.C. § 705 ... 3

5 U.S.C. § 706(2)(D) ... 12

42 U.S.C. § 7607(d)(9) ... 9

**Rules**

Fed. R. App. P. 18(a)(2) ... 3

Fed. R. App. P. 27 ... 28

Fed. R. App. P. 32 .......... 28

Fed. R. App. P. 32(f) .......... 28

**Regulations**

40 CFR part 58 .......... 6

80 Fed. Reg. 65,292 (Oct. 26, 2015) .......... 4

81 Fed. Reg. 91,841 (Dec. 19, 2016) .......... 20

83 Fed. Reg. 25,776 (June 4, 2018) .......... 4

85 Fed. Reg. 6,491 (Feb. 5, 2020) .......... 19

87 Fed. Reg. 60,926 (Oct. 7, 2022) .......... 19

87 Fed. Reg. 60897 .......... 4, 5

83 Fed. Reg. 56,781 (Nov. 14, 2018) .......... 19

84 Fed. Reg. 70,897 (Dec. 26, 2019) .......... 19

88 Fed. Reg. 775 (Jan. 5, 2023) .......... 19

89 Fed. Reg. 227 (November 25, 2024) .......... 1

89 Fed. Reg. 66,291 (Aug. 15, 2024) .......... 19

## INTRODUCTION

In the lame duck period after the 2024 election, EPA promulgated a final rule reclassifying the St. Louis region as being in "Serious" nonattainment for the 2015 Ozone National Ambient Air Quality Standards ("NAAQS"). *See* 89 Fed. Reg. 227 (November 25, 2024) (the "Final Rule"), Ex. 1. The Final Rule requires that Missouri enact new, more stringent air emissions limits on its own citizens and threatens to impose heavy monetary costs on the State and its residents. These burdens should never have been felt—the Final Rule contains fundamental deficiencies that rendered both the analysis and conclusion deeply flawed.

Missouri never had the opportunity to explain EPA's errors, however, because EPA rushed to publish the Final Rule without providing adequate notice or the opportunity to comment. This is a clear violation of the Administrative Procedures Act ("APA"), which requires notice and comment on all final agency actions except in certain, limited circumstances not applicable here. It is also in stark contrast to EPA's prior practice, which consistently complied with notice and comment procedures when publishing NAAQS reclassifications under the CAA.



Appellate Case: 25-1141 Page: 7 Date Filed: 05/20/2025 Entry ID: 5518264

EPA now agrees. Missouri filed a petition for judicial review asserting this decision was arbitrary and capricious and filed an administrative petition asking EPA to reconsider. EPA ultimately agreed with Missouri's position, granting Missouri's petition and representing that the agency "intends to undertake a notice-and-comment action to reconsider the determination." The agency has, to date, not yet done so. That means that the arbitrary and capricious Final Rule will continue to impose untold harm on Missouri and its citizens—even though EPA has already agreed to reconsider that rule.

Given this change of events, Missouri sought interim relief from EPA while EPA reconsiders its Final Rule. But EPA said it lacks statutory authority to stay implementation of the Final Rule it will ultimately reconsider. This Court should thus stay the rule during EPA's reconsideration.

Missouri easily satisfies each element to obtain a stay. Indeed, the State is likely to succeed on the merits of its challenge because EPA has *already represented* that it will reconsider the rule with a full notice-and-comment action. Furthermore, even if EPA had not already granted Missouri's petition for reconsideration, the State is likely to succeed on

the merits of its challenge. The Final Rule fails to establish each required element allowing the agency to disregard notice and comment procedures as "unnecessary," and the agency's argument is therefore forfeited. Even if the argument had not been forfeited, the scope of the Final Rule, coupled with EPA's own application of discretionary judgments, demonstrate that the narrow exceptions to notice and comment procedures do not apply.

Missouri also satisfies each remaining stay element. The Final Rule, currently in effect, inflicts significant harm on Missouri and its citizens. These harms—including intangible harms to Missouri's sovereignty and monetary harms to Missouri and its citizens—are both ongoing and irreversible. It is in the public's interest for the Court to stay arbitrary and capricious agency actions in favor of preserving the regulatory status quo, and the balance of equities favors staying a rule that EPA itself represents it will reconsider.

For each of these reasons and the reasons detailed at length below, Missouri respectfully moves under Federal Rule of Appellate Procedure 18(a)(2) and the Administrative Procedures Act, 5 U.S.C. § 705, to stay EPA's Final Rule pending either: (1) publication by EPA of a final agency

action reconsidering the Final Rule; or (2) final resolution by this Court of Missouri's petition for judicial review.[1]

## STATEMENT OF THE CASE

### I. Background on the 2015 ozone NAAQS and previous NAAQS designations for the St. Louis area

In October 2015, EPA reduced the National Ambient Air Quality Standards ("NAAQS") for ozone from 0.075 parts per million to 0.070 ppm. 80 Fed. Reg. 65,292 (Oct. 26, 2015). On June 4, 2018 EPA issued a final rule designating the St. Louis, MO-IL bi-State area as Marginal nonattainment for the 2015 ozone NAAQS. 83 Fed. Reg. 25,776, 25,815 (June 4, 2018). On October 7, 2022, EPA issued a final rule designating the St. Louis area as Moderate nonattainment for the 2015 ozone NAAQS. 87 Fed. Reg. 60897. Both final rules were preceded by publication of a proposed rulemaking and considered submitted comments before the final rules were published in the Federal Register. *See* 80 Fed. Reg. 65,326 (responding to comments); 87 Fed. Reg. 60897 (same).

[1] Missouri has conferred with counsel for EPA on this motion. Counsel for EPA represents that the agency will file a response to Missouri's motion to stay.

## II. EPA publishes the Final Rule reclassifying the St. Louis as "serious" nonattainment without providing Missouri notice or opportunity for comment.

EPA published the Final Rule on November 25, 2024, and the rule became effective on December 31, 2024. Final Rule at 92,816. In the Final Rule, EPA "determin[ed] that the St. Louis Moderate nonattainment area addressed in this action failed to attain the 2015 ozone NAAQS by the attainment date of August 3, 2024." *Id.* at 92,819.

EPA reached this conclusion by examining certain data to determine "the 3-year average of the annual fourth highest daily maximum 8-hour average ambient ozone concentration," a value referred to as the "DV." Final Rule at 92,818. The DV for the St. Louis region was determined by measuring the highest DVs among those monitors, which the Final Rule concludes are "valid DVs." *Id.* EPA determines whether a DV is "valid" for the purpose of the Final Rule based on the agency's judgment of whether the DV meets "minimum data completeness requirements." Final Rule at 92818 n.5. DVs recording measurements "greater than 0.070 ppm," however, are considered by EPA "to be valid *regardless* of the data completeness." *Id.* (emphasis added). The Final Rule additionally examined "hourly ozone

concentration data for calendar years 2021, 2022, and 2023" that EPA concluded were "quality-assured in accordance with 40 CFR part 58." Final Rule at 92818.

EPA never offered Missouri, or any other interested party, prior notice or an opportunity to comment before it issued the Final Rule. Final Rule at 92,819. Instead, EPA asserted, pursuant to 5 U.S.C. § 553(b)(B), it has "good cause" to issue the Final Rule "without providing notice and an opportunity for public comment." Final Rule at 92,819. EPA's basis for its "good cause" assertion was that "notice and public procedures are unnecessary to take this action" because, according to EPA, the Final Rule was based "solely on design values as of" a particular date and "area design value … based on certified air quality monitoring data governed by EPA's regulations." *Id.* As such, EPA believed that the Final Rule required "no judgment or discretion" on the part of the agency. *Id.*

Missouri timely filed a Petition for Review of the Final Rule on January 24, 2025. *See* Pet. for Review (Jan. 24, 2025). Also on January 24, 2025, Missouri submitted to EPA an administrative Petition for Reconsideration. *See* Ex. 2.



Appellate Case: 25-1141 Page: 12 Date Filed: 05/20/2025 Entry ID: 5518264

On February 10, 2025, EPA filed an unopposed motion to hold the case in abeyance. *See* Unopp. Mot. to Hold Case in Abeyance (Feb. 10, 2025). In its motion, EPA sought to hold the case in abeyance on the basis that "[t]here is now new leadership at EPA" and "[t]hat new leadership is in the process of familiarizing itself with the issues presented in both this case and Petitioner's administrative petition for reconsideration." *Id.* This Court granted EPA's motion to hold the case in abeyance on February 21, 2025. *See* Order (Feb. 21, 2025).

## III. EPA grants Missouri's petition to reconsider its determination that the area failed to attain by the attainment date, but asserts it does not have authority to stay the existing Final Rule

On March 5, 2025, EPA responded by letter to Missouri's Petition for Reconsideration (the "Reconsideration Decision"). *See* Ex. 3. In the Reconsideration Decision, EPA states that, "[a]fter evaluating [Missouri's] requests, the EPA is granting the petition to reconsider its determination that the area failed to attain by the attainment date." *Id.* "Accordingly, the EPA intends to undertake a notice-and-comment action to reconsider the determination." *Id.*

EPA denied, however, Missouri's request for EPA "to 'establish an administrative stay' of the action" based on the agency's belief that the APA and CAA do "not grant the EPA the authority to stay the determination because its effective date has passed." *Id.* EPA has offered no timeline of when a final action reconsidering the determination will be issued in the Federal Register.

On April 22, 2025, EPA filed a status report with this Court. *See* Status Report (Apr. 22, 2025). In the status report, EPA acknowledged "grant[ing] Petitioner's administrative petition for reconsideration" and representing that it "intends to undertake a notice-and-comment action to reconsider the determination." *Id.* at 2. EPA does not, however, offer any timeline in the status report for when such an action would be finalized. *Id.* As of the date of this motion, no such action has yet been taken.

**ARGUMENT**

This Court considers four factors in determining whether to grant a stay pending final judgment: (1) likelihood of success on the merits; (2) likelihood of irreparable harm if the stay is not granted; (3) the balance of equities; and (4) whether a stay is in the public interest. *Winter v. Nat.*



Appellate Case: 25-1141 Page: 14 Date Filed: 05/20/2025 Entry ID: 5518264

*Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each factor supports a stay of the Final Rule.

## I. Missouri is Likely to Prevail on the Merits.

To demonstrate it is entitled to a stay, a party must make "a threshold showing that it is likely to prevail on the merits." *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). As with other challenges to agency actions, this Court sets aside a final rule issued by EPA "if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' or 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *North Dakota v. EPA*, 730 F.3d 750, 758 (8th Cir. 2013) (quoting 42 U.S.C. § 7607(d)(9)).

### A. Missouri is likely to prevail on the merits because EPA has represented that it will reconsider the Final Rule.

Missouri is likely to succeed on the merits of its challenge for the simple reason that EPA has *already agreed* to reconsider the Final Rule. *See* Ex. 3. What's more, EPA has agreed that this reconsideration will be "a notice-and-comment action." *Id.* In other words, EPA will reconsider the Final Rule; the only question remaining is how long the Final Rule

will be in effect before it is replaced by a new rule subject to notice and comment.

As such, Missouri is likely to "succeed" on the merits, and a stay of the Final Rule entered by this Court until a new rule is finalized simply preserves the status quo that existed before the agency promulgated (and then later abandoned) the Final Rule. Missouri sought such a stay from the agency, which in response has never denied the merits of a stay. Rather, EPA simply asserted its belief that it lacks statutory authority to itself issue a stay. *Id.* Whether or not this is correct, this Court certainly suffers from no such limitation—especially when EPA has already said that Missouri *is* successful on the merits of its challenge.[2]

To allow the Final Rule to remain in effect would risk allowing arbitrary and capricious agency behavior to affect States and private parties without the opportunity for meaningful review. Although EPA has agreed in this instance to grant Missouri's petition for

---

[2] Indeed, EPA could have alternatively asked this Court to remand the rule to address the deficiencies in the Final Rule's notice-and-comment process. Courts "commonly grant" requests by agencies for a remand in order "to allow agencies to cure their own mistakes rather than wasting the courts' and the parties resources." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993).

reconsideration and "undertake a notice-and comment action to reconsider [its] determination," the Final Rule (and its ongoing harms to Missouri, detailed below) continues to bind the State of Missouri unless and until EPA's notice-and-comment reconsideration is complete. Without a stay, there is little to stop an agency from unlawfully promulgating an administrative action, granting a petition for reconsideration filed by a State shortly thereafter, but then applying the unlawful action against the State for the months (if not years) until the agency republishes a "reconsidered" notice-and-comment action. This Court's authority to stay administrative actions pending correction by the agency or full review by this Court mitigates such risks of temporary arbitrary and capricious agency behavior, and should be exercised here.

Until a new final agency action becomes effective, Missouri remains subject to a Final Rule which was arbitrarily and capriciously promulgated and which inflicts significant ongoing harms on Missouri. *See supra*. As such, this Court should enter an order staying the Final Rule pending either the effective date of EPA's final reconsideration (which would render this specific action moot) or a full adjudication of the Final Rule by this Court.

**B. Missouri is likely to prevail on the merits because EPA's determination that there is good cause for enacting the Final Rule without prior notice or an opportunity for comment was arbitrary and capricious.**

Even if EPA had not already represented that it will reconsider the Final Rule, Missouri is likely to succeed on the merits of its claim. The Final Rule fails to establish any good cause warranting a departure from regular notice and comment requirements. As such, EPA's failure to provide Missouri (or any other interested party) prior notice or comment was arbitrary and capricious.

"Agencies must conduct 'rule making' in accord with the APA's notice and comment procedures," and "a reviewing court may set aside agency action that has failed to observe those 'procedure[s] required by law.'" *Iowa League of Cities v. EPA*, 711 F.3d 844, 855 (8th Cir. 2013) (quoting 5 U.S.C. §§ 553(b), 706(2)(D)). This Court reviews *de novo* challenges to EPA's "compliance with APA procedural requirements," including "with the notice and comment provisions." *Id.* at 872 (internal quotation marks omitted).

The APA requires that "[g]eneral notice of proposed rulemaking shall be published in the Federal Register" and that agencies provide



Appellate Case: 25-1141 Page: 18 Date Filed: 05/20/2025 Entry ID: 5518264

"interested persons [with] an opportunity to participate in the rulemaking through submission of written data, views, or arguments." 5 U.S.C. § 553(b)–(c). In other words, sufficient notice under the APA requires that an agency "'allow[] interest parties to offer informed criticism and comments.'" *Citizens Telecommunications Co. of Minn. v. FCC*, 901 F.3d 991, 1001 (8th Cir. 2018) (quoting *Missouri Limestone Producers Ass'n, Inc. v. Browner*, 165 F.3d 619, 622 (8th Cir. 1999)). "An agency may waive the requirements of a notice and comment period and the 30-day grace before publication" only if "'good cause' [exists] to do so." *U.S. v. Brewer*, 766 F.3d 884, 888 (8th Cir. 2014).

The Final Rule expressly rejected notice and comment procedures, concluding instead that "there is good cause for making this final agency action without prior proposal and the opportunity for comment." Final Rule at 92,819. Missouri is likely to succeed on the merits of its challenge, because EPA's assertion of a "good cause" basis to deny any opportunity for notice and comment was arbitrary and capricious. This Court's review of whether good cause exists to disregard the APA's standard notice and comment requirements "owe[s] EPA's findings no particular deference." *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C.



Appellate Case: 25-1141 Page: 19 Date Filed: 05/20/2025 Entry ID: 5518264

Cir. 2012); *see also Sorenson Comm'n, Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014) ("[A court's] review of the agency's legal conclusion of good cause is *de novo*.").

EPA's sole asserted basis for denying Missouri the opportunity of notice and comment under 5 U.S.C. § 553(b)(B) is that "notice and public procedures are unnecessary to take this action." Final Rule at 92,819. According to EPA, its "action to determine whether this area has attained the NAAQS by the attainment date is governed … solely by area design values as of that date." *Id.* EPA asserts, in turn that "[t]he area design values relied upon in [the Final Rule] are calculations based on the certified air quality monitoring data governed by EPA's regulations and involve no judgment or discretion." *Id.* EPA provides no other support for its determination that it may issue the Final Rule without providing notice or the opportunity to comment.

Courts "have repeatedly made clear that the good cause exception" to the APA's notice and comment requirement "'is to be narrowly construed and only reluctantly countenanced.'" *Mack Trucks*, 682 F.3d at 93 (quoting *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001)); *see also Sorenson Comm'ns*, 755 F.3d at 706 ("[T]he



Appellate Case: 25-1141 Page: 20 Date Filed: 05/20/2025 Entry ID: 5518264

good-cause inquiry is 'meticulous and demanding'") (quoting *N.J. Dep't of Envt'l Protection v. EPA*, 626 F.2d 1038, 1046 (D.C. Cir. 1980)). Instances in which notice and comment procedures may be disregarded as "unnecessary" are "'confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, *and* inconsequential to the industry and to the public.'" *Mack Trucks*, 682 F.3d at at 94 (quoting *Util. Solid Waste Activities Grp.*, 236 F.3d at 755) (emphasis added).

**i. The Final Rule wholly fails to demonstrate the rule was either "insignificant in nature and impact" or "inconsequential to the industry and to the public."**

EPA fails to offer *any* justification in the Final Rule as to why the rule should be considered "insignificant in nature and impact" or is "inconsequential to the industry and to the public." Final Rule at 92,819. This alone is fatal to the Final Rule's assertion of "good cause." "It is a 'foundational principle of administrative law' that judicial review of agency action is limited to 'the grounds that the agency invoked when it took the action.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 20 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 758 (2015)).



Appellate Case: 25-1141 Page: 21 Date Filed: 05/20/2025 Entry ID: 5518264

In reaching a decision, "[t]he APA's arbitrary-and-capricious standard requires that agency action be reasonable and reasonably explained." *Federal Communications Commission v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). EPA's failure to offer any justification in the Final Rule supporting each of these required elements for establishing notice and comment as "unnecessary" sufficient to constitute "good cause" to disregard notice-and-comment ends the analysis. It certainly, at a minimum, establishes that Missouri is likely to succeed on the merits of its challenge.

**ii. Even if EPA had not waived the argument, the agency's decision to forego normal notice and comment procedures was arbitrary and capricious.**

Even if EPA had not failed to provide the necessary justification supporting its determination, the agency's assertion that it could bypass notice and comment requirements would fail. EPA cannot satisfy *any* of the required elements demonstrating that a showing of notice and comment is "unnecessary," let alone satisfy *every* element required for it to avoid APA notice and comment requirements.



Appellate Case: 25-1141 Page: 22 Date Filed: 05/20/2025 Entry ID: 5518264

*First*, EPA has not, and cannot, demonstrate that the Final Rule is "confined to those situations in which the administrative rule is a routine determination." *Mack Trucks*, 682 F.3d at 93. Even on the face of the Final Rule, EPA's insistence that it was simply making its determination without any agency input or discretion (and thus didn't need to offer affected parties notice or the opportunity to comment) is clearly incorrect. Rather, at numerous points in the Final Rule EPA goes far beyond a "routine determination" requiring no exercise of judgment or discretion. Under its own regulations, EPA determines whether a site satisfies the 2015 ozone NAAQS by electing to look at "the 3-year average of the annual fourth highest daily maximum 8-hour average ambient ozone concentration (*i.e.*, DV)." Final Rule at 92,818. EPA usually looks only at those monitors which it concludes have "valid DVs," an agency determination that itself requires a separate application of other prior regulations which the agency looks to in order to determine whether a monitoring site meets "completeness requirements." *Id.*; *id.* at 92818 n.5. In the Final Rule, however, EPA also elected to consider all "DVs greater than 0.070 ppm" in its analysis, "regardless of the data completeness" of those DVs. *Id.* at 92818 n.5. EPA also failed to consider critical facts in



Appellate Case: 25-1141 Page: 23 Date Filed: 05/20/2025 Entry ID: 5518264

the Final Rule, including prior EPA decisions which suggest (contrary to the conclusions drawn by the Final Rule) that once the agency determines an area has attained before the attainment deadline, subsequent violations do not necessarily trigger a more stringent nonattainment reclassification under CAA 181(b)(2)(A). *See* Ex. 2 at 5–8.

Each of these decisions by EPA—including determining whether certain monitors have measurements that are deemed by the agency to be "valid" or "complete[]," considering data from certain monitors (but not others) "regardless of data completeness," and considering past agency precedence from prior similar situations—are judgments made by EPA in the Final Rule before EPA reclassified the St. Louis region as "Serious."[3] It certainly cannot be said that any, let alone each, of these determinations was merely a "routine determination" requiring no exercise of judgment or discretion. As such, it was arbitrary and

[3] "Because there was no period during which [Missouri], or anyone else, could have offered comments" before the Final Rule was published, Missouri "does not need to show that any hypothetical comments would have changed the rationale underlying that rule." *Brewer*, 766 F.3d at 891. EPA's refusal to allow Missouri the opportunity to comment is enough to render the action arbitrary and capricious.

capricious for the agency to conclude notice and comment was "unnecessary."

EPA's representations—that its reclassification is simply a mechanical application of unassailable data not deserving of the regular requirements of notice and comment—is also belied by its consistent past practices allowing similarly situated parties the opportunity of notice and comment. Before the Final Rule was issued on November 25, 2024, EPA's regular practice was to engage in the standard notice-and-comment process when it reclassified nonattainment areas under the CAA. Indeed, in a multitude of actions prior to the Final Rule, EPA apparently agreed that a nonattainment reclassification requires at least a minimum degree of judgment or discretion to render regular notice and comment procedures "[]necessary."[4] The Final Rule offers no reason why

[4] *See, e.g.*, 89 Fed. Reg. 66,291 (Aug. 15, 2024) (proposing to find the Los Angeles nonattainment area had failed to attain); 88 Fed. Reg. 775 (Jan. 5, 2023) (reclassifying the Last Vegas, Nevada area as moderate attainment following notice and comment); 87 Fed. Reg. 60,926 (Oct. 7, 2022) (reclassifying five Serious nonattainment areas to Serious nonattainment areas following notice and comment); 85 Fed. Reg. 6,491 (Feb. 5, 2020) (proposing to reclassify the Shoreline Sheboygan, Wisconsin area as Serious nonattainment); 84 Fed. Reg. 70,897 (Dec. 26, 2019) (reclassifying areas of Colorado as Serious nonattainment following notice and comment); 83 Fed. Reg. 56,781 (Nov. 14, 2018) (proposing to reclassify seven Moderate nonattainment areas to Serious



Appellate Case: 25-1141 Page: 25 Date Filed: 05/20/2025 Entry ID: 5518264

it is any different from each of these prior similarly situated instances requiring notice and comment. An administrative rule reclassifying an entire geographical region as requiring more stringent requirements under the CAA is not a "routine determination" requiring no exercise of analysis or discretion. This fact alone is fatal to the Final Rule's suggestion notice and comment were unnecessary.

*Second*, EPA has not, and cannot, demonstrate that the Final Rule is either "insignificant in nature and impact" or "inconsequential to the industry and public." As Missouri demonstrates below, the ongoing irreversible harms inflicted by the Final Rule on Missouri and its citizens are significant. The reclassification of the St. Louis region in the Final Rule lowers emissions thresholds for a wide range of emissions, reclassifying many types of projects to be newly subject to major source permitting requirements. Ex. 4 (Affidavit of Mark Leath) at ¶14. The reclassification also compels Missouri to take several new compliance and regulatory actions, including developing and enacting an "enhanced monitoring network" and implementing an enhanced motor vehicle

---

nonattainment); 81 Fed. Reg. 91,841 (Dec. 19, 2016) (reclassifying the Sheboygan, Wisconsin area as Moderate nonattainment following notice and comment).



Appellate Case: 25-1141 Page: 26 Date Filed: 05/20/2025 Entry ID: 5518264

emission inspection and maintenance program. *Id.* at ¶16. These new requirements will require that Missouri undergo "several rulemakings to provide for the enforcement of several of the new Serious nonattainment area requirements." *Id.* at ¶18. In other words, private businesses and the State will be subject to significant additional economic costs from the reclassification in the Final Rule, and the State will be required to alter its own regulatory scheme. It can certainly not be claimed (and is telling that the Final Rule does not even attempt to suggest) that the scope of these effects is either "insignificant" or "inconsequential." This fact alone defeats the Final Rule's claim that notice and comment was "unnecessary."

## II. Missouri will suffer irreparable injury absent a stay.

### A. EPA's Final Rule impermissibly harms Missouri's sovereign interests in maintaining its own laws and regulating emissions within its own borders.

Under the CAA, Congress carefully crafted a system of cooperative federalism where States have the "primary" right to regulate air emissions within their borders. *North Dakota*, 730 F.3d at 757. The Final Rule inflicts irreparable injury on Missouri's sovereignty by requiring (through reclassifying the St. Louis area to "Serious") that



Appellate Case: 25-1141 Page: 27 Date Filed: 05/20/2025 Entry ID: 5518264

Missouri impose more stringent permitting requirements on its citizens and institute an enhanced motor vehicle emissions I/M program. *See* Ex. 4 at ¶¶14—16, 18, 20–25.

Each of these new requirements—imposed on Missouri under the CAA because of the Final Rule's reclassification—in turn compels Missouri to impose new "regulatory requirements" on major source permits in the St. Louis region that the State did not previously require. *Id.* at ¶¶13–14. Similarly, the Final Rule imposes requirements that Missouri "meet the requirements for an enhanced monitoring network[,] … develop a modeled attainment demonstration[,] … and develop an updated reasonable further progress demonstration." *Id.* at ¶16. Additionally, the new designation contained in the Final Rule requires Missouri to implement "an enhanced motor vehicle emission I/M program" that includes additional new regulatory components "not currently part of Missouri's I/M program in St. Louis." *Id.* at ¶22. Missouri would ultimately be required to "undergo several rulemakings to provide for the enforcement of several of the new Serious nonattainment area requirements." *Id.* at ¶18.



Appellate Case: 25-1141 Page: 28 Date Filed: 05/20/2025 Entry ID: 5518264

These regulatory requirements effectively require Missouri to alter its air emission regulations or otherwise take actions it would not otherwise take absent the Final Rule. EPA's ongoing attempts to arrogate Missouri's sovereign authority through arbitrary and capricious agency actions, in turn, constitute an irreparable harm to Missouri's state sovereignty. The non-monetary elements of the nature of this right also renders the harm irreversible, as the State will be without recourse for the harms EPA inflicts to its sovereignty during the review of the agency action. *See, e.g.*, *Kansas v. United States*, 249 F.3d 1213, 1227 (10th Cir. 2001) (Kansas suffered irreparable harm where a federal agency's decision "places [Kansas'] sovereign interests and public policies at stake"); *Kiowa India Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1171–72 (10th Cir. 1998) (interference with a tribe's sovereignty interests is irreparable harm); *Cf. Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2008) ("[T]he inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State.").



Appellate Case: 25-1141 Page: 29 Date Filed: 05/20/2025 Entry ID: 5518264

### B. EPA's Final Rule causes immediate, irreparable monetary harm to Missouri and its citizens.

Beyond Missouri's important federalism interests, the Final Rule threatens additional irreparable monetary costs on Missouri and its citizens. As detailed at length in the affidavit of Mark Leath, these monetary costs include time and resources expended by the State and its employees to develop plans responding to new additional SIP requirements, time and resources expended to develop an enhanced vehicle emissions inspection and maintenance ("I/M") program requiring mandatory on-road testing of vehicles, and the ongoing expenditure of state resources to comply with the heightened requirements of the mandatory enhanced I/M program. Ex. 4 at ¶¶22–25. Each of these costs is in addition to the significant new permitting requirements imposed on Missouri under the CAA due to the reclassification of the St. Louis region as "Serious." *Id.* at ¶¶12–15. These new, onerous permitting requirements will have "a direct negative impact on jobs, income, and tax revenue for the State of Missouri in the St. Louis area." *Id.* at ¶14.

Each of these economic harms to Missouri and its citizens stemming from the Final Rule is irreversible by virtue of the federal government's sovereign immunity to monetary claims stemming from the harm. *See*

*Iowa Utls. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (finding that the threat of unrecoverable economic loss due to a federal agency's sovereign immunity constitutes irreparable harm). These irreversible harms would be imposed by a Final Rule improperly promulgated against Missouri and which EPA has already represented it plans to reconsider.

## III. The Balance of Equities and Public Interest Favor a Stay.

A stay of the Final Rule is additionally warranted because it will preserve the status quo between the parties and protect both the public's interest in maintaining the current emissions control regime and Missouri's federalism rights under the CAA.

The central question this Court considers is whether the balance of equities demonstrates "that justice requires the court to intervene to preserve the status quo until the merits are determined." *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630 (8th Cir. 1991) (internal citations omitted). A stay will accomplish this goal. EPA will not be harmed from a stay of a Final Rule which it has already agreed to reconsider. Ex. 3. On the other hand, Missouri will be significantly harmed if the Court does not preserve the status quo in existence prior to EPA's unlawful promulgation of the Final Rule pending reconsideration by the agency. As detailed above, the

denial of a stay will cause irreparable harm to Missouri's sovereign federalism rights and inflict significant ongoing monetary costs on both the State and its citizens. Ex. 4 at ¶¶14–24.

It is also in the public's interest for this Court to stay agency actions that are in violation of the CAA, are arbitrary and capricious, and disrupts a State's regulatory structure. The public interest "weighs in favor of granting a stay" when "[a] stay would preserve the continuity and stability of [the current] regulatory system" pending judicial review. *Iowa Utilities*, 109 F.3d at 426–27. As Missouri has detailed at length, the Final Rule imposes significant, ongoing harms to the State in the form of, among other things, compelling Missouri to engage in "several rulemakings" that would permanently alter the State's air emission regulatory system. These changes to Missouri's air emissions regulatory system would be compelled by a rule which is not only arbitrary and capricious, but which EPA has already expressly stated it will ultimately reconsider. *Iowa Utilities*, 109 F.3d at 426–27.

## CONCLUSION

For the foregoing reasons, Missouri respectfully moves this Court to stay the Final Rule pending either final publication of EPA's



Appellate Case: 25-1141 Page: 32 Date Filed: 05/20/2025 Entry ID: 5518264

reconsideration of the Final Rule or a final judgment in this Petition for Review.

Date: May 20, 2025

Respectfully submitted,

ANDREW T. BAILEY
Attorney General

Joshua M. Divine
Solicitor General

*/s/ Samuel C. Freedlund*
Samuel C. Freedlund
Deputy Solicitor General
Office of the Attorney General
815 Olive St.
Suite 200
St. Louis, Missouri 63101
Phone: (314) 340-4869
Fax (573) 751-1774
Samuel.Freedlund@ago.mo.gov

*Attorneys for Petitioner.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

*/s/ Samuel C. Freedlund*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this motion complies with the typeface and formatting requirements of Fed. R. App. P. 27 and 32, that it is written in Century Schoolbook 14-point font, and that it contains 5,182 words as determined by the word-county feature of Microsoft Word and excluding those items excluded from length computations under Fed. R. App. P. 32(f). The Motion and this certification have been scanned for viruses and are virus-free.

*/s/ Samuel C. Freedlund*